STEPHEN H. TURNBULL *against* SARAH A. ROSS, EXECUTRIX, &c.

Where a referee, in an action for services as an attorney, there being contradictory testimony as to whether there had been a settlement and release, reported in favor of the plaintiff, the court at general term reversed the judgment entered on the referee's report, and vacated the order of reference, on the ground that the evidence on the part of the defendant in support of the release was clear, consistent, direct and probable, and that on the part of the plaintiff against it was confused, vacillating, inconsistent and improbable, and because the plaintiff had failed to deny, by way of rebuttal, admissions which the defendant's witnesses testified he had made.

APPEAL by defendant from a judgment of this court entered on the report of a referee.

The action was to recover $6,150 15 for professional services as attorney rendered by the plaintiff to the firm of Ross & Marshal, between February 1st, 1866, and September 20th, 1866.

The defendant Francis A. Ross answered and interposed, 1, a general denial, and 2, alleged that the plaintiff had been paid in full for all services rendered, and had given a release.

On the trial before the referee the plaintiff testified that he had been retained by Ross & Marshal to protect their rights under certain patents owned by them for sewing machine cases. He detailed the nature and amount of those services, and swore that he considered the sum claimed in the complaint as only a reasonable compensation for them, and in this estimate he was supported by the testimony of two other attorneys.

It appeared also that a previous suit had been commenced by the same plaintiff against the same defendants, in which the summons had claimed $630, but before the complaint was served the suit had been settled and discontinued on the payment by Ross, on July 19th, 1867, of $300, for which a receipt was given by the plaintiff, expressing it to be in full settlement " of all claims and demands of every name and nature which I have against them (the defendants) or either of them, all of which are hereby released and forever discharged."

The plaintiff's evidence tended to show: 1, that he had signed this release in ignorance of its contents, and 2, that the former suit did not cover the claim now sued on.

The evidence on both sides in regard to the question of this release is fully stated in the opinion.

The referee reported in favor of the plaintiff for the full amount claimed.

Pending the action Ross died, and the action was revived against the appellant, his executrix.

*A. W. Speir*, for appellant.

*Ira Shafer*, for respondent.

DALY, Chief Justice.—This judgment cannot be sustained. The receipt for the $300 given on July 19th, 1867, by the

plaintiff was in full settlement of the action, and of all claims and demands of every name and nature which the plaintiff had against the defendants, or either of them, all of which it was declared, were thereby released and forever discharged. It was drawn by a lawyer, Conable, presented by him to the plaintiff, and signed by the plaintiff, himself a lawyer. The plaintiff's evidence respecting it was equivocal and unsatisfactory, whilst the testimony of Conable was direct, circumstantial and uncontradicted by the plaintiff in its details. When the receipt was first shown to the plaintiff upon the trial, he could not say whether it was his signature. He said it *looked like* his signature. Then that he never executed it; that he never *signed it* when it had a seal on; but that he did give a receipt for the full amount of the suit. Finally conceeding that it was his signature, he said that he signed it in a hurry; that he merely glanced at it, reading part of it, and seeing that it was for $300 in full, and entitled in the action which was to be settled, that he signed it.

The letters of the plaintiff of July 13th and 17th, 1867, to Elliot, state that the plaintiff agrees to accept *so small a sum in settlement of his claim* on condition of being paid at once, and asks if the testator had accepted his offer, and two days after the last of these letters (July 19), the receipt in full and release was signed by the plaintiff. Elliot swore that on the 19th July, 1867, he called at the plaintiff's office and left a message or a note for him, he (Elliot) having been employed by the testator to defend the suit brought against the defendants by the plaintiff for his services, and that the first of these letters of the plaintiff, saying that he had agreed to accept so small a sum, &c., was received in reply to this message or note. These letters were shown to the plaintiff upon the trial, and he admitted that they were signed by him, and upon his doing so he was asked if he then had any doubt that he had subscribed his name to the receipt and release, to which he replied that he had doubt; that he did not think it was in his handwriting. Afterwards he said that he gave two receipts to Conable for the same amount, one that he had prepared before Conable came, and the

Turnbull v. Ross.

·other the one brought by Conable, which was admitting that he had signed the receipt and release.

To get rid of the difficulty of this receipt and release, he testified that the $300 was received. in full settlement of an action brought by him against the defendants for services rendered by him individually to them *after* the services for which this action was brought. That his claim for subsequent services amounted to about $500, and that he did not include the previous services in the action, because he was in doubt whether to sue the defendants alone for them, or to unite Davis with him as co-plaintiff, because Davis was to share in the profits ; that a writing had been drawn up to that effect, but had never been signed either by Davis or himself. That there was a partial understanding between Davis and himself that they were to take hold of the matter (that is, perform the services for the defendants jointly), but that he and Davis did "not entirely " enter upon the performances of them with that under-.standing. That he was retained in the first instance by the testator, together with Davis, to prosecute *their* infringers, that is, the infringers upon the defendants, and that when the services terminated, the testator repudiated Davis. He was asked if he told the testator, at the time when he was retained by the testator, that Davis was to have half the profits arising from the plaintiff's services, and he answered that he did not think he did, nor did Davis in his presence, to his recollection.

This shallow statement furnishes its own refutation. It admits that Davis and the plaintiff had no joint claim against the testator for the services rendered, and that there was no ground whatever for bringing a suit against the testator to recover $500 for subsequent services, when the plaintiff had a claim against him for $6,150 for previous services, in respect to his right to sue for which there was, upon his own statement, not the slightest doubt.

I forbear to dwell upon the extraordinary valuation put by the referee of $5,000 for the plaintiff's services upon a consultation at a single sitting at Mr. Stoughton's office, when a settlement was effected, each item of the plaintiff's previous services having been separately charged for; as in my judgment

the case is disposed of by the documentary evidence of a settlement of all claims which the plaintiff had against the testator.

I have pointed out the unsatisfactory character of the plaintiff's testimony respecting this receipt. Conable details all the circumstances that occurred at the time when the receipt was signed. He shows that the plaintiff not only knew that the instrument was a release of all his claims against the testator, but that the plaintiff at first offered to give a simple receipt, and that Conable positively refused to take it or to pay him the $300, unless he would execute the release. That he executed it in Conable's presence, who signed it as subscribing witness, and after doing so told the plaintiff that to make a perfect release the instrument should be sealed; that he asked the plaintiff if he had any seals, upon which the plaintiff produced one and the witness put it on the paper in the presence of the plaintiff, and then handed the plaintiff the check for the $300. Conable also testified that when he saw the plaintiff upon this occasion he said to him that he had come in pursuance of an arrangement which his partner Elliot told him he had made with the plaintiff, to settle all the matters for $300, and that the plaintiff replied that he had made that arrangement with Elliot, and was willing to settle upon those terms. That he then asked the plaintiff how they were to know what was being settled, as there was no complaint served; that the testator proposed to have a full settlement of *everything up to that day*, and had authorized the witness to deliver the check of $300 only upon the condition that it was to be a full settlement, and that the plaintiff replied that he understood it so. The witness also asked him what his claims were for, and he said for a large amount of services for the defendants (being the services sued for in this suit); that he thought he could get more upon the trial; but that, in consideration of getting the money that day, he would take $300.

All that there was to conflict with this circumstantial statement was the previous testimony given by the plaintiff, for he did not, after this testimony of Conable, go upon the stand to contradict any of the details of what he said and what Conable said to him. Where a witness, who is himself the plaintiff in

Turnbull v. Ross.

the action, has his attention called to a number of details like this, involving admissions made by him at the time, which are in direct conflict with his previous loose general statement, especially when they are narrated with so much preciseness and particularity as they were in this instance, and does not offer anything in reply, it shakes the integrity of his previous statement, as it warrants the suspicion that he could not, or was unwilling to, go again upon the stand and specifically deny the various circumstances and statements called to his attention by the witness as having occurred at the time when the receipt was signed.

In addition to this, a member of the bar was called by the defendants, who had read the plaintiff's testimony, examined the pleadings and the bill of particulars, and who had been retained by a great many companies and corporations to prosecute infringements, which was the kind of professional service rendered by the plaintiff for the defendants. This was a witness especially qualified to judge of the pecuniary value of the plaintiff's services; certainly much more so than the plaintiff's two witnesses Jackson and Caldwell, who had no knowledge of the services other than as disclosed in the complaint and bill of particulars; and he gave it as his opinion that $250 was a full compensation for all the services charged for by the plaintiff; in other words, that the $300 paid upon the settlement was even more than the value of the services sued for in this action.

We are empowered by the Code to review the facts, upon an appeal from a report of a referee, and in my opinion it would amount to great injustice to allow this report to stand. I think, therefore, that the judgment should be reversed, and and the order of reference vacated.

Loew, J., concurred.

Judgment reversed, and order of reference vacated.